Our next case, 19-7009, U.S. v. Cristerna-Gonzalez. Good morning, Your Honors. John R. Ceci from the Federal Defender's Office, appearing for the appellant Abel Cristerna-Gonzalez. Your Honors, the principal issue in Mr. Cristerna's trial was whether he knew about the drugs seized during the traffic stop and whether he intended to possess and distribute them. But the government proved these key elements of knowledge and intent in contravention of the rules of evidence. Most problematically, and what I'd like to focus on today, is that the government improperly used its lay witnesses to introduce quintessential expert testimony. You didn't object. There was no objection. So there was no opportunity for the government to put on evidence to suggest they did have expertise. There's certainly indication that they had expertise in these matters. I think the precedent says you're just stuck in that circumstance. A lot of times, counsel do not object to expert testimony, even though the expert has not been designated as an expert by the court, because they don't want to emphasize the fact that the person is an expert. So we rely on counsel objecting to expert opinion at the time it's offered. And when you didn't object, or you're the trial attorney. I'm taking it personally. Did not object. That foreclosed the possibility of the government making the proper proffer. And why should we reverse just so we can have a hearing where it seems to me that there's a pretty good likelihood that the expertise of these witnesses could be established. Okay. So I've got a couple answers. There's a lot there. To begin, I don't think that there is anything in this Court's case that suggests a per se rule that plain error review is somehow unavailable to expert witnesses' challenges. And moreover, I think it's important to recognize that certainly the defense failure to object, and I'm not defending that on any grounds, obviously, consigns Mr. Versterna to plain error review. But one of the other reasons why there is no record in this case is because the government did not notice its experts. It made a strategic decision to proceed with lay witness testimony. Was there a demand? Was there a proper demand for that? I don't think there was. So. You don't have to disclose it absent a demand. So the answer to that is outside the record, candidly, Your Honor, in that. So there's no record to support that. There is no record to support that, but there was, I can't inform the Court, that there was. Don't inform the Court of the record. You're not supposed to. So the challenge with that question, Your Honor, is that a lot of times these demands are made informally by letter and wouldn't necessarily be reflected in the record. That is that they're made as part of discovery requests that are not made part of the docket in the court. And so absent an objection, it would never have, never find its way into the record. I do think that there's grounds under Rule FRAP 10 and this Court's equitable procedures for supplementing the record to introduce that. I can deal with that in a 28-J letter, though. But putting that demand aside, the government certainly didn't choose to proceed with lay witness testimony, and that's fine. That's a strategic decision. But it consigns their witnesses to proper lay testimony. Well, on the plain error rule, one of the prongs is whether there's prejudice. And the argument that kind of was focused on was, was there prejudice or not, how prejudicial, how important was this testimony? But it seems to me that's not the right question for prejudice here. The question for prejudice here is, if he had objected, isn't it likely that he would have been, that the officers would have been qualified as experts, and therefore no prejudice, not because their testimony wasn't important, but because it would have been so easily remedied. Why isn't that part of the prejudice pronged? So I guess two responses, Your Honor. First, I think it's not the right analysis, but even assuming it is, I think we still better. I suppose not, but then I want to hear your other answer. Sure. So let me deal with the second part first. That is, even let's assume that's the right analysis, and I'll go back to why I think it's not. I think there's at least a couple reasons why we can't say for sure on plain error review on the third prong that these experts would have been qualified. Right? First. You can't say for sure, but nothing in the law requires a statement for sure. Certainly that's not the standard, but there's even a reasonable probability that they wouldn't have been. Right? In the sense that we have known. Can we not? We know their history. Their testimony did discuss their history, and can't we say we've seen a dozen cases with this kind of history, and they've always gotten approved as experts? And that is all we know is that they had experience as law enforcement officers, and there is no per se rule that says law enforcement officers are qualified as experts. Let me read from an unpublished opinion of this Court, and you can see if it's persuasive. Convince us it's not persuasive. Okay. Even if we assume that the testimony constituted expert opinion, we cannot say this was in a criminal case. We cannot say that the witness's testimony clearly violated Rule 702. That would depend on the officer's expertise and experience, and we have no way of knowing what that was. Because defendant did not object to the testimony, there was no occasion for the government to make a record on those matters. Where the determined effects are missing from the record, we will not find plain error based on the possibility that better factual development would have made the error clear. This rule is particularly appropriate here because defendant does not argue that the officers lacked the necessary expertise and experience. Go ahead. Well, I guess a couple of responses. You know, that does sound in a degree on plainness as well as the third prong, but even assuming that that's sort of a third prong analysis, I think that we don't, the last part of that discussion there is that we don't have anything here other than the years of experience, right? And that's... We have missing facts, and in general, we don't find plain error when the facts were developed. Well, that's true, and I've seen the Saucito, those line of cases, certainly. But that's usually when there's a fact that a defendant is objecting to on appeal and is contesting a fact that was unchallenged essentially below. What we're challenging here is effectively opinion testimony that I think is very hard to characterize as anything other than improper expert testimony. And so if we're looking at it as a third prong analysis, I really think it comes down to the fact that law enforcement officers just, they're not immune from exclusion as experts. And if you apply that sort of categorical approach... You're absolutely right. If there had been an objection and they hadn't been qualified, I mean, this is purely a procedural bar, but it's an important procedural bar because there may have been no problem if the objection had been raised. Moreover, I think the other thing to consider, too, is that if the objection had been raised at that time and this testimony was not admissible as lay opinion, it would not have been admissible under Rule 702 either because the government would have failed to comply with Rule 16's disclosure requirements. Not necessarily. It would not be excluded on that basis because they hadn't violated the rule unless they failed to respond to a proper request and there's nothing in the record to show that request. When it's not in the record, it makes a difference because maybe we don't know what the... You suggested there was an informal request. Are you going to have any outside experts coming in we'd like to depose? Something like that. We don't know exactly what the request was. That's why it's important to do it formally. You'll have no pushback from me on that, Your Honor, that there are forfeitures on a couple grounds here. I do think I can deal with that and I will in a 28-J letter. I'm not going to waste the Court's time trying to argue something that isn't in the record today. You cited a case. I think... It's not clear what happened in that case. I guess let me also counter that unpublished decision with another unpublished decision, which is the Banks case that we cited in our briefing, in which this Court recognized that plain error had occurred in the admission of the witness's testimony and then proceeded to conduct a third-prong analysis that looked solely at the question of whether or not there was other overwhelming evidence of guilt. To get back to Judge Ebell's question, that is that there was error, it was plain, but it didn't matter because there was overwhelming evidence of guilt in that case. This is nothing like that. And I guess I would also point to the published decision in Byerly that assumed error on the first two prongs and then proceeded to conduct an analysis that was a third-prong analysis that removed the evidence that offended the rule and then conducted the overwhelming evidence. Why isn't the evidence pretty overwhelming here, even if we exclude the officer's testimony about code names and about practices? I mean, we got this guy driving a car, I mean, passenger in a car with a lot of drugs in the overhead light, and he admitted, he testified and admitted that he installed those overhead lights. And he gave an inconsistent story about the location that they were going to, then the driver. Why isn't that pretty overwhelming guilt, even without consideration of the text message? Well, it's not just the text message. It's the testimony about the pipeline account. It's testimony about eastbound, westbound lanes. It's testimony about the money orders going to Mexico. It's a whole nexus of opinion evidence that took this case from one of proximity. That is a passenger in a vehicle, admittedly with a little bit more, in the sense that he was a welder and had welded the light bar on, but moves it into possession. And that he gave an inconsistent story from the driver about their location. True. We have got cases that have said that evidence, without anything more, is sufficient for a conviction, I'm sure. It's certainly sufficient for reasonable suspicion and continued attention with the stop. By all accounts, Mr. Cristerna's statements to law enforcement were actually accurate. It seems that the vehicle was probably going to Tennessee and to Nashville, and that he disclosed his proper name, his real name, and that it was the other defendant who ultimately pleaded guilty to this offense and didn't go to trial that gave an inconsistent testimony. But certainly it would be reasonable suspicion. But I don't think it's suspicious, sure. And that's why the officer was able to detain these people. But I don't think that trial evidence, particularly in light of Mr. Cristerna's testimony, to the contrary, which was significantly undermined, obviously, by the opinion testimony that was introduced, elevates this case from one of proximity to proof beyond a reasonable doubt of knowledge and intent to possess those drugs. Now, if you're not 100% there with me on the third prong on the expert witness issue, I'd suggest that you can also get there by taking our third issue and looking at this as a cumulative error analysis. So before we go there, could I move back to the second prong from the third prong? We have a number of published cases in our circuit recognizing circumstances where law enforcement officers have been permitted to testify as expert witnesses based on their professional experience. But my question to you is, where can we find the strongest Tenth Circuit case to show that a law enforcement officer testifying based on professional experience must be qualified as an expert under Rule 702? What's your best case? I mean, you mentioned banks, but that's unpublished. Sure. I think there's three cases, I guess. I would start, the best case, I think, is this Court's recent decision in Duran from the end of last year, which we cited in the reply brief, in which there's an analysis of both what's expert and what's lay witness testimony. And both of those were admitted separately. I also think that Your Honor's opinion in James River, although a civil case, very clearly establishes the rule. I'm sorry, I didn't hear the name of that case. James River. It's also cited in the opening brief. And I think it clearly articulates the rule that Duran applies. And then lastly, I think Medina Cupete, which is cited in the reply brief, very clearly notes that although, sure, experience, of course, is a basis for qualification to Rule 702. That's what Kumo Tyer says. And what the advisory committee notes, Ru, that there's nothing inevitable about law enforcement experience being the sine qua non of admissibility. And I'd like to reserve the balance of my time, if I may. Although, Judge Ebell, I didn't hear your question before. Did you have a question? I'm sorry. Thank you. We'll give you a minute. Your Honors, may it please the Court, my name is Linda Eberle. I'm with the United States Attorney's Office in Muskogee, and I represent the government in this matter. As way of backdrop, this case was tried in a district where we've been dealing with one district judge for several years. The only district judge. And over that time, our office, in conjunction with the Federal Public Defender's Office, and the members of the panel, like Mr. McLaughlin here, have become quite adept at really carving down a case to the bare necessities in order to keep the docket going. In this case, that was followed. The two sides get together early on as much as possible. We pre-admit all the exhibits. We use stipulations to avoid expert testimony. And we try to pare these jury trials down to the extent we can so that our judge has the time available to try the other cases and deal with the civil docket. I just offer that as a way of background, as perhaps an explanation for how we got to this case. It was tried in half a day or something. Yes, it was. We had our two ex- Our two- I misspoke. We had our two law enforcement witnesses. I don't think you- They were testifying. And we had the defendant, you know. Let me get to what bothers me most. Certainly. This Sinaloa cartel testimony really bugged me. That seems totally inappropriate. Can you give any justification for that? I'm not asking for a harmless error argument. That's something we'll have to consider. How can you justify that? Well, a couple of ways. One, I believe that that testimony contradicted and rebutted the defendant's- Was it put on in rebuttal or in the direct? It was put on in direct, but it- Was it rebutting something he said when he was arrested or what? It's something that he . . . it's what the defense was going toward, which was that he's completely innocent. He had no idea that this money was suspicious. But that's not quite . . . that's not a sufficient answer for Judge Harsh, I don't think. Whether it was a rebuttal testimony or whether it was your case, but after some other position that the defendant presented. Was that Sinaloa testimony after something else came into evidence about him not having connections with Mexico? Well, no. I mean, his driver's license said he was from Mexico, so the jury certainly knew he was from Mexico. So it's hard to see how you can say this was an invited error then? Well . . . I mean, that's where you were going, but I don't think you're going to get there. To an extent. That's one argument. I think another argument is that it goes to this defendant's believability. For him to attempt to argue that he came from this area and had no idea that that should raise any suspicion is just not logical. But . . . To not know that there . . . I'm not saying he's a participant, but I'm saying he . . . What did he say that was inconsistent with being from a drug area? Well, I do not have a record citation for you, Your Honor, and I'm sorry, I do not. But I believe that the court could contrast this easily with the Tenth Circuit case involving the state of Colorado and the argument there that you couldn't simply say, well, because they're from that state is definitely prejudicial because that was a case dealing with marijuana, which the court pointed out was now legal in about half the country. You couldn't use that as a basis of suspicion or to make an inference. But this is not . . . How big is Sinaloa? How many people live there? Would it be like saying, how can you live in the United States and not know about drugs? No. And I can't tell you the population, but I can tell you it is one of the states. First of all, not a state in this country, not a state that we typically see people from on I-40 necessarily. Well, could you have said he's from Mexico? I mean, they have problems, serious problems in Mexico. He's a Mexican, so he must know all about drugs. No. You couldn't say that? I don't believe you could say that. I think that there might be, depending upon all the other answers that are given and the other factors that Trooper Hyde discussed, there might be other things that raise your suspicion. But that alone I do not think you could say. Here, the question about whether it was notorious and whether there was a drug cartel by that name were two questions out of what I admit was a short trial. But given the . . . We may affirm that because it was harmless, but I'd sure hate to have that taken as support for that type of evidence. Maybe I'm just speaking for myself, but it really bothered me. We certainly appreciate that, and it's something that I would certainly take back to our office and let them know that we should not be doing this. You had me as a jointer on Judge Hart's opinion on that. But on harmlessness, where does the fact that the jury sent a note that they were originally deadlocked and that they took eight hours or six hours or whatever it was in deliberations, how does that fit into whether this is harmless or not? Well, I think it fits into an analysis that also sort of comes up in the plain error as to whether or not the evidence was overwhelming, et cetera. The particular place that that comes up here with the Allen charge is that I think it's important that the defense were the people who were supporting the Allen charge. My reading of the record is that the AUSA was actually suggesting caution. Perhaps we weren't to that point yet, and it was the defense attorney who said, no, I think we should give the Allen charge. It's like a spark plug. They'll get back there and give us a verdict. They sent a note out. Am I wrong on that? Didn't the jury send a note out that they are deadlocked? I believe they sent a note out in the evening that they were deadlocked, and the next morning when they came in they were given the Allen charge. So it wasn't like anybody being hyper-proactive or sensitive. I mean, it was the jury that raised the issue in the first place. So there's a lot of reasons the jury could be deadlocked. It could be because they're concerned about this testimony of the Sinaloa. It could be worried about the testimony of the officer about what the text message said. Or it could have just been something else. It could have been do we have any information about this jury about more why they sent the note out or even any other information about them. To my knowledge, we don't know why they were deadlocked, and I don't think that that's something the court would ordinarily inquire about. It would not. The court would never inquire. It couldn't inquire. I just wondered if there was something in the note. Not that I'm aware of. If there is, I do not recall it at this time. They didn't ask for some testimony or exhibit? I don't think so. I think not that I recall is perhaps the best answer I could give. So shouldn't we infer that this is a closer case than we might have thought otherwise just by looking at the record? One of your harmless, you've got a couple of harmless issues. One is the evidence is so overwhelming that it wouldn't have mattered. Other harmless is what Judge Hart said was that they could have easily gotten qualified as experts anyhow. Exactly. That's a totally different harmless error. But let's go back to the first one. And my question is where does the deadlocking of the jury fit into our harmless error on that first analysis? Well, I think it fits in a couple of ways. One, the fact that they were able to reach a verdict, that the proof was overwhelming, and that this is a case in which the defendant's credibility was able to be examined on cross-examination. So the jury was not left with looking at this in a vacuum. They were able to see the defendant, see his testimony, assess their believability for themselves. And there's a Tenth Circuit case, I believe it is Burrell, that talks about that as being an important factor. I think it is important, as Judge Hart's explained, that these people clearly would have qualified as experts. The number of years of their experience, the fact that there was no defense request in the record that I'm aware of for a report or notice. But we certainly know there wasn't any surprise that these people testified. In fact, a large part of the testimony that was brought out regarding the experts was in fact solicited by the defense attorney on cross. Especially any opinions about believability, and I think that's noted in our brief. Counsel, could I just ask you about something you just said? That the law enforcement officers could have been qualified as experts. Are you conceding there was an error in that they were not qualified as experts? In other words, we've been talking a lot about the steps of plain error, but we really haven't said that. We haven't said much about step one, but are you conceding error at step one? No, Your Honor. We are not conceding. Why not? Beg pardon? Why not? Why not? We are not conceding error because we believe that there are cases from this circuit that allow experts to give, I did it again, that allow witnesses to give opinion type testimony or define terms or talk about trends when that is something not that they're coming in and giving a classic expert examination. How do you distinguish James River then? First it's a civil case, but we believe that the, could I have just a moment, Your Honor? It seems the fact that it's a civil case makes matters worse for you. Well, I think one of the distinguishing things would be that the James River case involved things that would be considered far beyond a normal juror or normal officer's information, such as technical analysis, evaluation of how you work out the post-fire estimate of a pre-fire value of a condemned 30-year-old building. That's not quite the same as a law enforcement. How about code words in the text? Would the jury understand what those are? The code words have been allowed by several courts. I would, and... Well, code words have been allowed when the law enforcement officers have been testifying as experts. The Quintana case, for example, do you have a case where non-experts have been able to explain the code words, not based on their investigation of the particular case, but based on years of professional experience? In all candor, I will tell the judge that the majority of the cases, or the cases that we found, were certainly, it was more obvious that the terms were defined based upon what they learned in that particular investigation. In fact, our cases always make that reference when we're talking about it. To me, your stronger argument is one of relevancy. Why did the jury even need to know what each of those code words meant? That's a piece of the picture, but it doesn't go to an element. I mean, even if nobody said what those code words meant, they still had the drugs discovered, they had inconsistent statements, and they had code words being talked about. And they knew that. They didn't need any officer to say, you're talking in code. Well, that's enough to say you've got to be suspicious if you're talking in code. And why does it even matter in this case that they knew which referred to crack or which referred to something else, or how much quantities? It's not a very relevant fact. It is, I guess, relevant to show that they're trying to hide their behavior. I do not know that it certainly wasn't what the case turned on, in my belief. But you don't need them to say, yeah, they're talking in code. That's self-evident. You don't need any officer to say what the code words mean. It's self-evident they're talking in code. That's the point. And so the testimony of the officer about this is what those code words mean, I don't see how that is. If, under plain error, we are talking about prejudice as one of the prongs, I don't see how that testimony is very prejudicial. No, they didn't necessarily need to know whether China was heroin or cold was methamphetamine, other than what was found in the light bar. And the other texts that were discussed were discussed simply for the timing of them texting, wondering what's happened, they haven't heard from you, you're stopped. So we would ask the court to affirm and promise the court that we will not dance so close to this line in the future. If there are no further questions. I'm going to try to make two or three quick points. With respect to the third issue, the Sinaloa testimony, some toxins are deadly in small amounts. And this was extraordinarily problematic testimony and extraordinarily prejudicial, and I would suggest that you can reverse on that ground alone. But at minimum, I think you should take that error and consider it cumulatively in the Caraway analysis as part of the third prong analysis of the expert witness testimony. That is that it enhances the prejudice in this case that was, as you pointed out, viewed by the jury as incredibly close, even with this impermissible testimony. And I think if you apply a categorical rule that impermissible expert testimony can never satisfy third prong of plain error review, I think then you risk turning the gatekeeping function in Kumotire into a pro forma exercise that has no real remedy. And moreover, it goes without saying, I think that... We're also telling people to object when something can be done about it. And by all means, I think of your Honor's opinion in Martinez-Torres, where a supervised release case in which you encouraged counsel in the courts to pay more attention to supervised release at sentencing and not treat it as a secondary condition. By all means, I think you should admonish the defense counsel, government counsel, and the courts about what is proper and what is not proper and when you need to object in these cases. But you should still reverse, and Mr. Christiano should get a new trial. Thank you. Thank you, counsel. Case is submitted. Counsel are excused.